IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| Patricia Vickland, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-0758-CV-W-DGK |
| | ) | |
| The American Royal | ) | |
| Association, Inc., and | ) | |
| Clifford "Bud" Sloan | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION FOR INJUNCTIVE RELIEF

This case arises out of the disappearance of seventeen year-old girl's prize-winning steer from the 2007 American Royal Livestock Show ("Livestock Show") and Defendant The American Royal Association, Inc.'s subsequent investigation into the matter.

Pending before the Court is Plaintiffs' Motion for Temporary and Preliminary Injunctive Relief (Doc. #1-3) attached to Defendants' Notice of Removal (Doc. #1). The Court has reviewed Plaintiffs' Verified Petition (Doc. #1-2), Plaintiffs' Motion and Suggestions in Support (Doc. #1-3), Defendants' Suggestions in Opposition (Doc. #6), Plaintiffs' Reply (Doc. #9), and the various affidavits and exhibits submitted by the parties. The Court also heard argument from the parties during an October 21, 2008 hearing.

For the reasons discussed below, Plaintiffs' Motion is DENIED. In order to promptly issue a written ruling to the parties the Court has focused its order on those arguments which it finds dispositive. The Court makes no ruling on arguments or issues not addressed in this order.[1]

---

[1] During the October 21 hearing Plaintiffs asked the Court to issue its order by October 23, 2008, the last day they believed it would be possible for the Vicklands to transport animals to Kansas City for the Livestock Show. Plaintiffs also requested that they be given time to file a reply to Defendants' Suggestions in Opposition. This reply brief was not filed until after 5:00 p.m. on October 21. Although the Court has read and digested this brief, it has

**Provisional Findings of Fact**

The Court notes at the outset that much of the evidence that has been presented is widely divergent, is based in whole or in part on hearsay, and is presented in the form of affidavits or a verified petition which are self-serving. Accordingly, the Court emphasizes that the following findings are provisional and are not binding at trial on the merits. *See Noodles Development, LP. v. Ninth Street Partners, LLP*, 507 F.Supp.2d 1030, 1034 (E.D. Mo. 2007) (observing that "[t]he general rule is that findings of fact and conclusions of law made in a court's disposition of a motion for preliminary injunction are provisional.")

The Court finds as follows: Plaintiff JPV Farms, LLC is engaged in the business of farming, including the breeding, raising, purchasing, marketing and presentation of show animals and other livestock. Plaintiff Patricia Vickland is the mother of Plaintiff Mark Vickland, an adult, and minor Plaintiffs Sarah Vickland, age seventeen; Emma Vickland, age fifteen; Hannah Vickland, age thirteen; Grant Vickland, age eleven; Hans Vickland, age nine; and Vada Vickland, age nine.

Defendant The American Royal Association, Inc. ("the American Royal") is a not-for-profit benevolent corporation organized under Missouri law. It sponsors a number of events in Kansas City, including the Livestock Show. The City of Kansas City, Missouri ("the City") uses tax money to promote some of the America Royal's events, and the City has entered into a facilities agreement with the American Royal under which it leases the premises and provides set-up services for City-owned equipment used in the event. Under the agreement the City also provides some supervisory and technical staff for free during American Royal events, and the

---

not had sufficient time to prepare a lengthy, detailed order addressing all of the arguments raised by the parties, and so focuses this order on those arguments which are cdispositive.

City is responsible for the daily maintenance and clean-up of Kemper Arena and bleaches and bathrooms in American Royal facilities.

The American Royal has an advisory board consisting of elected state and local officials from Kansas and Missouri whose participation in the Royal is ceremonial. These advisory board members have no right to vote at American Royal board meetings, none of them participated in the American Royal's Executive Committee ("the Committee") investigation or eventual ruling with respect to the Vicklands, and none have the right or responsibility to manage the American Royal's operations.

On or about August 31, 2007, Sarah Vickland and her mother, Patricia Vickland, completed an entry form to participate in the Livestock Show. Pursuant to the entry form they agreed "to abide by all the rules of the American Royal Livestock Show . . . as set forth in the General Information and Rules and Regulations Section of the American Royal Livestock Premium Book . . " On or about October 20, 2007 Sarah Vickland presented a crossbreed steer[2] identified as American Royal tag number 462, also known as "Friction," for competition in the Livestock Show. Friction eventually won his weight class for Junior Market Steers but did not place in the division competition. As a result of Friction placing first in his weight class, under the rules of the Livestock Show Sarah Vickland was required to sell the steer in an auction at the conclusion of the competition. For reasons the parties dispute—Plaintiffs' contend the steer was simply stolen by Brian Martin ("Martin"), Defendants intimate that Patricia Vickland or an associate may have been aware of, or complicit in, its removal—Friction disappeared and was never presented for the auction. The Vicklands reported the alleged theft to the Kansas City, Missouri Police Department ("KCMOPD"), and the American Royal permitted Sarah Vickland to present a proxy steer in the auction. Although the replacement steer was not actually sold, its

---

[2] A steer is a castrated bull.

presentation generated proceeds of $5,250 during the auction, proceeds which have not been given to Sarah Vickland and are at issue in this dispute.

The Committee subsequently investigated Friction's disappearance. On or about November 30, 2007 the Committee sent Sarah Vickland a letter asking her to provide "any information within your knowledge or possession concerning the disappearance and/or whereabouts of the steer." On or about December 30, 2007, the letter was returned with a handwritten note from Patricia Vickland stating "<u>We Have No Knowledge Nor Any Possession</u> of/about the stolen Steer #362--& I expect you to forward the Sale Proceeds immediately." (Emphasis in original.) On January 7, 2008, Patricia Vickland again wrote the American Royal, stating that "**Neither Sarah, nor I, nor any of our family have any knowledge about or possession of the steer**." (Emphasis in original.) In subsequent communications the Vicklands reiterated that they had no knowledge regarding the steer.

In the meantime the American Royal received a report that in December 2007 Brett Riggs exhibited Friction at the Arizona National Livestock Show ("Arizona Livestock Show") where it was selected as the Grand Champion of the Arizona National Junior Market Steer Show. DNA tests subsequently confirmed that Friction was presented at both shows. The Arizona Livestock Show subsequently investigated and disciplined the Riggs family by barring them from participating in future shows for three years, but took no action against Patricia Vickland.

On June 10, 2008, the Committee made several determinations regarding the events surrounding Friction's disappearance, the most controversial being that Patricia Vickland made a report to the KCMOPD that Friction was missing but subsequently communicated to the KCMOPD that she did not want the investigation to proceed. The Committee also noted that in

an interview with American Royal staff members Martin claimed he had Patricia Vickland's permission to remove Friction from the grounds of the American Royal.

Plaintiffs' disputed these determinations and were subsequently given an opportunity to present evidence and make arguments to the Committee. On September 10, 2008, Plaintiffs appeared before the Committee through their attorneys and presented live witness testimony, hearsay, documentary exhibits, and argument. The hearing lasted approximately three and a half hours, and, at Plaintiffs' request, a court reporter transcribed the proceedings. All of the Plaintiffs' live witnesses testified under oath.

During this hearing the Vicklands presented testimony from Todd Caldwell, an associate of the Vicklands and their supplier of show steers. Among other things Caldwell testified that shortly after show day Martin approached him after and expressed interest in acquiring Friction, proposing to switch Friction's ear tag with another steer to evade the American Royal's rule that all winning steers be sold at auction and slaughtered. Caldwell's testimony was the first time the Committee heard these allegations, and Patricia Vickland did not attend or testify at the meeting as the Committee expected she would, events which appear to have led the Committee to draw adverse inferences against the Plaintiffs, and particularly Patricia Vickland.

Following the hearing the Committee conferred and sanctioned the Vicklands. Specifically, the Committee retroactively disqualified Sarah Vickland as a 2007 American Royal exhibitor, revoking all of her 2007 titles and winnings and paying no premium auction proceeds, and then barred Patricia and Sarah Vickland from participating in the Livestock Show for five years. The Committee also decided to report Patricia and Sarah Vickland's actions to the North American Livestock Show and Rodeo Managers Association ("NALSRMA"), which tracks disciplinary infractions and reports them to its members.

The effect of this last sanction is potentially far reaching. Although each NALSRMA member livestock show has its own rules and regulations governing how it will treat competitors sanctioned at other shows, because the American Royal is so prestigious and well-respected, many NALSRMA member livestock shows will likely embrace the American Royal's determination and similarly sanction the Vicklands, which as a practical matter will preclude the Patricia Vickland, Sarah Vickland, and Patricia Vickland's minor children from participation in most NALSRMA sanctioned shows for the next five years.[3] It is unclear how the sanctions will affect Mark Vickland or JPV Farms, LLC.

Plaintiffs' seek an injunction (1) enjoining the American Royal from barring Plaintiffs from participating in current and future American Royal activities; (2) enjoining the American Royal from taking any action which may preclude Plaintiffs from participating in any events sponsored or organized by NALSRMA or its member organizations; (3) enjoining Defendants from making further false, libelous, slanderous or defamatory statements impacting Plaintiffs' liberty and property rights; and (4) requiring the disputed award money to be placed in a segregated account pending resolution of this case.

**Standard for Issuance of a Temporary Restraining Order or Preliminary Injunction**

In determining whether to grant a temporary restraining order or preliminary injunction the Court considers: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and any injury that granting the injunction will inflict on the non-moving party; (3) the likelihood that the moving party will prevail on the merits; and (4) the public interest. *Phelps-Roper v. Nixon*, 509 F.3d 480, 484 (8th Cir. 2007). No single factor is determinative, they must be "balanced to determine whether they tilt towards or away" from granting the injunction.

---

[3] The decision barring Patricia Vickland from participation in the Livestock Show for the next five years will effectively exclude her minor children as well because the American Royal's rules require a parent or legal guardian to sign the entry form for juvenile competitors, and Ms. Vickland is a widow.

*Noodles Development, LP. v. Ninth Street Partners, LLP*, 507 F.Supp.2d 1030, 1034 (E.D. Mo. 2007). An injunction is an extraordinary remedy and the movant bears the burden of establishing the need for such relief. *Id.*

## Discussion

### A. Likelihood of Success on the Merits

To demonstrate likelihood of success on the merits, a movant does not need to show that it ultimately will succeed on its claims, only that the movant's prospects for success is *sufficiently likely* to support the kind of relief it requests. *Id.* (emphasis added) (citations omitted). That is, the movant need only show "a fair chance of prevailing." *Phelps-Roper*, 509 F.3d at 485.

#### 1. Whether the American Royal is a state actor for purposes of § 1983.

In order to prevail on its § 1983 claim Plaintiffs must establish that the American Royal is a state actor. A defendant is a state actor under § 1983 if "the conduct at issue is fairly attributable to the state." *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (citations omitted). This determination turns on the specific facts of each case, but generally a private actor can be characterized as a state actor where the private actor is "a willful participant in joint activity with the State or its agents" and "where there is pervasive entwinement between the private entity and the state." *Id.* Plaintiffs argue that the American Royal is a willful participant in a joint activity with the City and there is pervasive entwinement between the two because the American Royal is a not-for-profit corporation chartered pursuant to Missouri state law; the advisory board consists of several Missouri state and local officials; the City uses tax money to promote and support the American Royal; and the City operates certain parking lots during these events and receives the revenue from these parking lots. Plaintiffs also note that

under the facilities agreement the City leases City owned equipment to the American Royal, reserves the right to serve refreshments at the American Royal, pays for the American Royal's office space, provides storage area near the American Royal facilities, provides signage and security for American Royal events, and requires the American Royal not to discriminate.

The Court finds that this is insufficient to demonstrate that Plaintiffs have a fair chance of prevailing on their claim that the American Royal's actions are fairly attributable to the State. The fact that the American Royal is incorporated under Missouri law does not weigh in favor of finding that it is a state actor, it means the American Royal is properly registered to conduct business as a not-for-profit benevolent corporation in Missouri, nothing more. Similarly irrelevant is the fact that some elected Missouri officials serve on an "advisory board" for the Royal. The advisory board is purely ceremonial and has no right or responsibility to manage the American Royal, and no advisory board members were part of the executive committee. As defense counsel put it, they ride on horses at the front of the parade and hand-out blue ribbons. This only evidences that the American Royal is interested in cultivating an amicable relationship with its landlord, the City, and the political decision makers who are in a position to improve—or worsen—the conditions under which the American Royal operates. It does not demonstrate state action. *See Watts-Means v. Prince George's Family Crises Center*, 7 F.3d 40, 43 (4th Cir. 1993) (holding fact that county government had a representative on not-for-profit's board of directors was not enough to show action taken under color of state law).

Finally, the fact that the City provides some financial support to the American Royal, operates parking lots in conjunction with the events, and entered a lease that resembles a commercial lease (i.e., the landlord provides utilities and certain services, signage and security, while keeping the rights to certain revenue streams, like concessions), albeit with more favorable

conditions to the tenant, is also insufficient to show persuasive entwinement.  Cities frequently enter into lease agreements with private associations to use city property and facilities, and such agreements do not convert the private actor into a state actor.  *Id.* (holding not-for-profit that received financial support from county government not a state actor); *see also Spencer v. Community Hospital of Evanston*, 393 F. Supp. 1072, 1077 (D. Ill. 1975) (receiving state money, leasing land from state agency, and being heavily regulated by state not enough to convert a not-for-profit hospital into a state actor) (citations omitted).  The fact that the City was willing to give the American Royal a favorable lease only speaks to the relative bargaining position of the parties; it is no secret that the American Royal is important to the greater Kansas City area's economy, and that the City (and the states of Kansas and Missouri for that matter) would not like the American Royal to leave Kansas City as other major conventions have done in recent years.

Accordingly, the Court finds that Plaintiffs have not demonstrated a fair chance of prevailing on the merits of their §1983 claim.

### 2. Plaintiffs' chance of prevailing on their implied covenant of good faith and fair dealing claim.

Plaintiffs argue they are entitled to injunctive relief because the American Royal violated an implied obligation of good faith and fair dealing in conjunction with Plaintiffs' applications to participate in the Livestock Show.  The parties do not appear to dispute that the entry form completed by Sarah and Patricia Vickland in August of 2007 arguably created a contract from which an implied duty of good faith and fair dealing could arise, and that injunctive relief is available to remedy a breach of such a duty.  The question then is whether the American Royal

9
Case 4:08-cv-00758-DGK   Document 10   Filed 10/23/08   Page 9 of 17

breached any duty or obligation owed to Patricia or Sarah Vickland, and by extension, her other children.[4]

Plaintiffs assert that the "the cornerstone of the present controversy is the unfair and arbitrary application of the rules and the denial of a fundamentally fair hearing that resulted in a patently unfair result." Pls.' Sugg. at p. 5. In response, Defendants argue that the Committee had an absolute right to interpret and apply the Livestock Show's rules and resolve all matters relating to them, and that Plaintiff cannot show that the American Royal exercised its absolute discretion in bad faith. Defendants also note that the duty of good faith and fair dealing cannot be used to modify a contracts terms or conditions, which they intimate Plaintiffs are attempting to do.

As an initial matter the Court rejects Plaintiffs' claim that the American Royal was obligated to provide Plaintiffs with a hearing that passes Fourteenth and Fifth Amendment Due Process scrutiny, because, as discussed above, the American Royal is not a state actor. Furthermore, without deciding the issue of whether the Committee had an *absolute* right to interpret and apply the Livestock Show's rules, the Court finds that Plaintiffs have not demonstrated that the American Royal's rules and hearing process was arbitrary or unfair. Based on the present record it appears the Committee's investigation and procedures were sufficient to provide Plaintiffs' with a fair hearing: Plaintiffs received a hearing; they had advance notice of the hearing and adequate time to prepare, including being provided with a fairly specific list of the Committee's preliminary determinations or concerns; they were permitted to be represented by counsel and bring a court reporter to transcribe the proceedings; they were permitted to offer a

---

[4] The Court assumes for the sake of argument that even though the other Vickland children were not parties to the contract they have standing to litigate a breach of the contract because they will be adversely effected by the Committee's decision to ban their mother from competition for five years.

range of evidence, including hearsay evidence, live testimony under oath, and exhibits; and counsel was permitted to make arguments to the Committee before it reached a final decision.

Plaintiffs' complaints—that the burden of proof was unclear and on them, that they did not have an opportunity to cross-examine the witnesses against them, that the Committee had already reached a preliminary conclusion before the hearing, etc.—are simply misplaced. Plaintiffs were not entitled to all the protections of a criminal defendant in an American courtroom; this was a hearing held by a private association operating under its own rules. Interestingly, it appears that what hurt Plaintiffs' case most of all was not the lack of any of the aforementioned procedural safeguards, but Plaintiffs' apparent failure to fully cooperate with the Committee's investigation, and Patricia Vickland's decision not to testify before the Committee, events which likely led the Committee members to draw adverse inferences about what they might be trying to hide. And, because they the American Royal is a private organization, the Committee was under no duty to refrain from drawing adverse inferences in such circumstances.

Accordingly, the Court finds that Plaintiffs have not met their burden of demonstrating a fair chance of prevailing on their claim that the American Royal violated an implied covenant of good faith and fair dealing.

### 3. Plaintiffs' chance of prevailing on their tortious interference with a business expectancy claim.

In order to prevail on their claim of tortious interference with a business expectancy Plaintiffs must establish: (1) a valid business expectancy; (2) Defendants' knowledge of the relationship; (3) intentional interference by Defendants causing breach of the relationship; (4) absence of justification; and (5) damages. *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006). Plaintiffs have failed to demonstrate the first and fourth elements.

11

Plaintiffs have not established that any valid business expectancy exists, more specifically, they have not demonstrated a connection between the Vickland family's participation in junior livestock shows and a valid business expectancy. As Todd Caldwell's testimony from the September 10, 2008 hearing indicates, the Vickland children's involvement in junior livestock shows is not about business, but in teaching them important values:

> I mean, [Patricia Vickland] [has] shown some really nice animals over the course of time and has had several opportunities to sell those animals for a premium. And that's not why she does this, you know. She [is] involved in this, you know, to help keep the kids on the right path.

Hr'g Tr., p. 28, ll. 5-10.

Even if there were a valid business expectancy, Plaintiffs have not demonstrated an absence of justification in the American Royal's interference. From the record it appears that the American Royal had a valid justification to issue its sanctions: It acted to preserve the integrity of the reputation of its junior livestock competition. Although Plaintiffs rightly point out that any justification for the action must have been in good faith,[5] and have submitted hearsay evidence suggesting that prior to the hearing Defendant Sloan believed that Patricia Vickland had something to do with Friction's disappearance, and that once she retained "a fancy attorney" to pursue contest the sanctions he and the Committee were so incensed that that they planned "on ruining her," this evidence does not trump or erase the other evidence in the record suggesting that the Committee's decided to sanction the Plaintiffs for their failure to provide it with all relevant and material information during the investigation. Viewing the entire record as a whole, the Court is unconvinced that the Plaintiffs have a fair chance of establishing this element of

---

[5] *See Institutional Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 587 F.Supp. 1105 (D.C. Mo. 1983) (holding conduct must be reasonable under the circumstances and done in good faith).

their claim at trial, and thus finds that Plaintiffs have not met their burden of demonstrating a fair chance of prevailing on their tortuous interference with a business expectancy claim.

### 4. Plaintiffs' chance of prevailing on their constructive trust claim.

Plaintiffs' request that the Court require the American Royal to place the disputed award money in a segregated account, a constructive trust, pending resolution of this case. A constructive trust is a method by which a court exercises its equitable powers to remedy a situation where a party has been wrongfully deprived of some right, title, benefit, or interest in property as a result of fraud or in violation of confidence or faith placed in another. *Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. en banc 1993). The purpose of the constructive trust is to restore to the rightful owner property wrongfully withheld. *Id*.

In the present case, assuming that Sarah Vickland was wrongfully deprived of her winnings, the Court does not see how Plaintiffs can demonstrate that she was deprived of these winnings as a result of fraud or in violation of confidence placed in another. There is simply no evidence on the record that she was somehow swindled or defrauded of the money.

Furthermore, to the extent that proving that an adequate remedy at law does not exist is also an element of a constructive trust claim, the Court finds that Plaintiffs cannot make this showing for the reasons discussed below.

### B. Threat of Irreparable Harm to the Movant

To demonstrate a sufficient threat of irreparable harm the moving party must show that there is no adequate remedy at law, that is, that an award of damages cannot compensate the movant for the harm. *See Noodles Development*, 507 F.Supp.2d at 1036-37. Plaintiffs' seek an injunction (1) enjoining the American Royal from barring Plaintiffs from participating in current and future American Royal activities; (2) enjoining the American Royal from taking any action

which may preclude Plaintiffs from participating in any events sponsored or organized by NALSRMA or its member organizations; (3) enjoining Defendants from making further false, libelous, slanderous or defamatory statements impacting Plaintiffs' liberty and property rights; and (4) requiring the American Royal to place the disputed award money in a constructive trust pending resolution of this case.

If a temporary injunction is not issued enjoining the American Royal from banning the Plaintiffs from any participating in American Royal Livestock Shows or reporting them to the NALSRMA, Patricia Vickland, Sarah Vickland, and Patricia Vickland's minor children will likely not be able to participate in most NALSRMA sanctioned shows until this case is resolved on the merits. They would certainly not be able to participate in this year's American Royal Livestock Show, which would be an irreparable harm in the sense that monetary damages could not compensate the children for a lost opportunity to participate in a junior livestock competition.

It is unclear, however, how these sanctions will affect Mark Vickland or the family business, JPV Farms, LLC. Although Plaintiffs suggest that the sanctions will likely mean the death of their show cattle business, the record contains little more than bare allegation to support this assertion. Furthermore, there is no evidence to suggest that there would not be some way to ascertain the reasonable market value of this business were it to become defunct, thus a monetary award for damages would compensate the Plaintiffs for any harm.

With respect to an injunction enjoining the Defendants from making false, libelous, slanderous, or defamatory statements, if the injunction is not issued there is some risk that Plaintiffs' reputations will be marginally tarnished and that business will suffer a marginal loss of good will. The Court believes the risk of harm to the movant is small because the national cattle showing circuit appears to be relatively insular and allegations such as those at issue are

fairly rare, thus the Court suspects that most people who might hear any defamatory statements have already heard them and Plaintiffs have already suffered whatever reputational damage they are going to suffer. In essence, the bell has already rung and an injunction will not unring it.

Furthermore, any harm caused by Defendants statements can presumptively be remedied by damages. "[B]ecause ordinary libels may be remedied by damages, equity will not enjoin a libel absent extraordinary circumstances." *Metropolitan Opera Ass'n., Inc. v. Local 100, Hotel Employees and Restaurant Employees*, 239 F.3d 172, 177 (2d Cir. 2001). In the present case Plaintiffs have not proven any extraordinary circumstances, and the Court can find none.

Likewise with respect to the request for a constructive trust, it is obvious that an adequate remedy at law exists, namely, awarding damages in the amount of the disputed award money. Although Plaintiffs suggest there is ineffable prestige value attached to the auction proceeds, they do not explain how placing the proceeds in a constructive trust will preserve this prestige. In any event, the Court finds that to the extent there is prestige attached to the auction proceeds, it will be restored if a jury finds in favor of Miss Vickland and awards her monetary damages, because a jury verdict will serve as public vindication that she truly deserves these proceeds and any accolades that accompany it.

Accordingly the Court finds there is no threat of irreparable harm to the movant if the Court fails to enjoin the Defendants from making certain statements or order that the disputed award money be placed in a constructive trust.

C.  **The Balance Between the Threat of Irreparable Harm to the Movant and Any Injury That Granting the Injunction Will Inflict on the Non-Moving Party.**

A decision by the Court to enjoin Defendants from making certain statements will, by definition, act as a governmental prior restraint on Defendants' First Amendment right to free speech. It is well-established that a prior restraint on expression comes with a heavy

presumption against its validity. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971) (citations omitted). When a prior restraint takes the form of a court-issued injunction, the risk of infringement on the right to free speech increases. *Metropolitan Opera Ass'n., Inc.*, 239 F.3d at 176. Consequently injunctions are not ordinarily appropriate to prevent defamation or libel, except in extraordinary circumstances. *See id.* In the present case the record is devoid of extraordinary circumstances, and so finds that the constitutional injury that will be inflicted on the Defendants by enjoining them from making certain statements outweighs any threat of irreparable harm to the Plaintiffs.

Turning to Plaintiffs' request to enjoin the American Royal from barring Plaintiffs from participating in future American Royal activities, or taking action which may preclude Plaintiffs from participating in any NALSRMA events, this request obviously impinges on the American Royal's right to regulate and enforce its own rules, and courts should not interfere with the internal disciplinary proceedings of a private, not-for-profit organization unless there is a violation of "the law of the land." *Jackson v. American Yorkshire Club*, 340 F.Supp. 628, 632 (N.D. Iowa 1971) (Hanson, J.) (citation omitted); *McCreery Angus Farms v. American Angus Ass'n*, 379 F.Supp. 1008, 1019 (observing that "'courts are loath to interfere' in the internal affairs of private associations") (citation omitted). Whether or not this Court particularly agrees with the Committee's decision to sanction Sarah and Patricia Strickland, and however sympathetic the Court may feel towards the minor Plaintiffs in this case, the principle remains that absent a violation of the law this court has no business looking over a private organization's shoulder and second-guessing its decisions. Balancing the injury to the American Royal's right to self-governance against the threat of irreparable (that is, non-compensable) harm to the

Plaintiffs, which is minimal, the Court finds the scale swings in favor of not issuing the injunction.

### D. The Public Interest

Finally, Plaintiffs argue there is no public interest implicated here that should cause the Court not to enter temporary and preliminary injunctive relief. Defendants suggest that granting the requested injunction is adverse to the public interest insofar as it will encourage other members of private organizations to seek judicial intervention anytime they disagree with a disciplinary ruling. Although the Court does not believe that issuing an injunction in this case would result in an avalanche of litigation over how the American Royal may police its Livestock Show, the Court believes that the public interest will best be served by reaffirming the right of private organizations to enforce their own rules. Accordingly the Court finds that to the degree the public interest will be effected one way or the other, the public interest weighs against granting the motion.

### Conclusion

For all of the reasons discussed above, the Court finds Plaintiffs have not met their burden to demonstrate the need for a temporary and preliminary injunction. Plaintiffs' Motion for Temporary and Preliminary Injunctive Relief (Doc. #1-3) is DENIED.

**IT IS SO ORDERED**

Date:  October 23, 2008  /s/ Greg Kays
                                                                     GREG KAYS, JUDGE
                                                                     UNITED STATES DISTRICT COURT